# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL    929.294.2540
DIRECT EMAIL   jdabbs@kaplanhecker.com

November 17, 2020

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      **RE:**    <u>United States v. Arguedas *et al.* (Denise Bullock)</u>, 20 Cr. 135 (JMF)

Dear Judge Furman:

      We respectfully submit this letter-motion to modify the conditions of defendant Denise Bullock's pretrial release from home incarceration to home detention and to permit non-stationary employment. Pretrial Services is unable to consent to any non-stationary employment for defendants on home detention and does not generally take a position on requests for bail modifications. But PSO Bernisa Mejia, Ms. Bullock's supervisor, has permitted counsel to convey her view that Ms. Bullock "would be a suitable candidate for home detention if the Court deems it appropriate," and that Ms. Bullock has "done extraordinarily well" during her several months of pretrial supervision. The government has indicated that in deference to Pretrial Services, it takes no position on the request for modification to home detention and opposes permission for non-stationary work.

      Ms. Bullock is one of fifteen defendants accused of a range of offenses arising out of alleged membership in a New York City gang. *See* Superseding Indictment, *United States v. Arguedas* et al., No. 20-CR-135 (JMF), ECF 49 (S.D.N.Y. Mar. 23, 2020). Unlike most of her co-defendants, Ms. Bullock was not charged with a violent assault or a firearms offense. *Id.* In August, Ms. Bullock petitioned the Court for conditional pretrial release. (ECF 214.) On September 15, Your Honor granted Ms. Bullock's application and ordered her to serve home incarceration pending trial. (ECF 224.)

      After several months of Ms. Bullock's perfect compliance with the stringent terms of her home incarceration, it is apparent that the current conditions of Ms. Bullock's pretrial release are no longer "the least restrictive" possible to "reasonably assure" her appearance and public safety. *See* 18 U.S.C. § 3142(c)(1)(B). Moreover, counsel's extensive review of the government's

KAPLAN HECKER & FINK LLP

discovery suggests that "the weight of the evidence" does not justify the prospect of Ms. Bullock being under home incarceration for the approximately sixteen months between this application and the very distant trial date. We therefore respectfully request that the Court modify the conditions of Ms. Bullock's pretrial release as proposed below.

I.  **Applicable Law**

Pretrial detention and conditional release are governed by the Bail Reform Act. *See* 18 U.S.C. § 3142 *et seq*. The Act generally provides that pretrial defendants shall be released on personal recognizance or on an unsecured bond, released on conditions that will reasonably assure their appearance and the public safety, temporarily detained for certain purposes, or detained through disposition of their case if "no condition or combination of conditions will reasonably assure" their appearance and the public safety. *See* 18 U.S.C. § 3142(a)-(e).

If the Court determines that release on a personal recognizance or unsecured appearance bond will not reasonably assure the defendant's appearance or the public safety, the Court "shall order the pretrial release of the person…subject to the least restrictive further condition, or combination of conditions," that the Court determines will reasonably assure her appearance and the public safety, if such conditions are possible to impose. 18 U.S.C. § 3142(c)(1)(B). The Court granted Ms. Bullock's conditional release under this provision in its September 15, 2020 order. (*See* ECF 224.)

Where, as here, the Court has conditionally released a pretrial defendant, "[t]he judicial officer may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3); *see also, e.g., United States v. Bronfman*, No. 18-CR-204, 2019 WL 203111, at *1, 3 (E.D.N.Y. Jan. 15, 2019) (citing § 3142(c)(3) to amend conditions of pretrial release first on the defendants' request and later on the government's request). The Court's ability to amend the conditions of a defendant's pretrial release helps fulfill the Bail Reform Act's command that such conditions always be "the least restrictive" to "reasonably assure" the defendant's appearance and the community's safety.[1]

---

[1] In an order concerning a co-defendant's application for a modification from home detention to a curfew, the Court indicated that such applications are governed by 18 U.S.C. § 3142(f). That provision states, among other things, that "[t]he [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *See United States v. Arguedas (Mickey)*, No. 20-CR-135 (JMF), ECF No. 211 (S.D.N.Y. Aug. 25, 2020).

We respectfully submit that 3142(f) does not govern applications by conditionally released pretrial defendants to modify the conditions of their release. By its terms, § 3142(f) concerns facts "bearing on the issue *whether* there are conditions of release that will reasonably assure" the defendant's appearance and the public safety. 18 U.S.C. § 3142(f) (emphasis supplied). Defendants on conditional pretrial release have already received a determination that there are such conditions. Their applications for modification seek only to "amend the [conditional release] order to impose additional or different conditions of release," *id.* § 3142(c)(1)(B), which "[t]he judicial officer may [do] at any time," *id.* § 3142(c)(3). *See, e.g., Bronfman*, 2019 WL 203111, at *1, 3 (E.D.N.Y. Jan. 15, 2019). (*Continued on next page*)

2

KAPLAN HECKER & FINK LLP

## II.  Ms. Bullock's Proposed Modifications

Ms. Bullock has complied with all of the stringent conditions of her pretrial release imposed by this Court's September 25 order. (ECF 224.) These include home incarceration at a family member's apartment on Staten Island, leave of Court for any departures other than for medical and legal visits approved in advance by Pretrial Services, and daily communication with Pretrial Services. (*Id.* at 1-2.) Pretrial Services Officer Bernisa Mejia, Ms. Bullock's pretrial supervisor, has permitted counsel to convey her "pride" in Ms. Bullock's "full compliance" and to note her comment that "anything I need from [Ms. Bullock], she gets it done."

Ms. Bullock's exemplary compliance has come in the face of significant challenges. The site of her home incarceration has proven manifestly unsuitable for this purpose. In October, Ms. Bullock made an application to re-locate her home incarceration to a presumptively more suitable home maintained by another family member in Brooklyn. (*See* ECF 232.) While the Court granted this request, (ECF 233), complications within Ms. Bullock's extended family ultimately prevented her from moving to this new location. In the ensuing period, we have learned more about the unsuitable conditions at Ms. Bullock's current location on Staten Island, including pest and rodent infestations, uncared-for pets, and loud noise and guests of the householder throughout the day and night. These conditions make it difficult for Ms. Bullock to maintain a safe lifestyle, frustrate her ability to have her children visit without the court permission necessary for her to travel to see them, and impair her ability to work with her counsel to prepare her defense.

Recently, Ms. Bullock and her counsel have worked with additional members of her New York City-based extended family to develop a potential alternative arrangement. This arrangement would involve Ms. Bullock renting an apartment in Queens with her son Da'neil's aunt, D.B., with whom she has been close for many years. D.B. is older than Ms. Bullock, has no criminal record, maintains close ties with Ms. Bullock's son, Da'neil, and is gainfully employed in her Queens-based family food and beauty-services business. D.B.'s family has indicated that it could provide Ms. Bullock with immediate part-time employment in their family business.[2] And Ms. Bullock's steady income from a public benefits program, along with her personal savings, potential income from part-time employment, and commitments of modest

---

(*Continued from previous page*)  To be clear, Ms. Bullock's application would satisfy the standard in § 3142(f), as much of the reason to modify her conditions arises out of recent developments that bear materially on whether there are conditions that could reasonably assure her appearance and public safety. But we respectfully suggest that the proper standard for this application is whether "different conditions of release," § 3142(c)(3), would be "the least restrictive" possible to fulfill the Bail Reform Act's purposes under § 3142(c)(1)(B).

[2] We understand that D.B.'s family business includes both a beauty salon and retail store as well as a robust food-preparation and delivery service that primarily serves its local Queens community. While parts of this business are obviously impacted by the COVID-19 pandemic and its ensuing restrictions on in-person commercial services, the food-preparation and delivery business is reportedly performing well and is expected to provide a solid financial base for D.B. Should the Court permit Ms. Bullock to work part-time while on home detention, Ms. Bullock's most immediate and viable job opportunity would be to assist in D.B.'s family food-delivery business as well as sell hair and beauty products to the business's food-delivery customers.

KAPLAN HECKER & FINK LLP

additional financial support from her family, would allow her to afford her portion of the rent in an apartment shared with D.B.  A clean and quiet apartment would also allow Ms. Bullock to host her children for safer and more extended visits than are possible at her current site of home incarceration on Staten Island.

In order to take advantage of these alternative arrangements, Ms. Bullock respectfully requests that the Court:

- Modify Ms. Bullock's home incarceration to home detention.[3]

- Permit Ms. Bullock to work part time at a job that may include making occasional deliveries.

> Pretrial Services has indicated that defendants on home detention are typically limited to employment at "stationary" job sites.  We respectfully submit that the COVID-19 pandemic, which has decimated stationary service-sector jobs in New York City, makes reasonable a modest deviation from this apparently typical condition of home detention.  *See, e.g.*, James A. Parrott and Lina Moe, *No Cure in Sight: The COVID-19 Economic Virus in New York City as the End of Summer Approaches* at 1, NEW SCHOOL CENTER FOR N.Y.C. AFFAIRS, August 2020, *available at* https://perma.cc/4QQ2-GJ7U ("Covid-19-related job losses have swamped the face-to-face industries (especially restaurants, retail, local services, and arts and entertainment), hitting hardest low-wage workers, persons of color, immigrants, young workers, and less-educated workers.  On the other hand, job displacement has been more moderate in essential and remote industries.").  Ms. Bullock has a much more realistic chance of finding gainful part-time employment if she is able to take a job, like the one offered to her by D.B.'s family food-delivery business, that includes occasional travel or is otherwise less than fully stationary.

> In certain cases, non-stationary employment may frustrate the purposes of the Bail Reform Act by undermining the reasonable assurance that the defendant will appear for court and not threaten the public safety.  Those concerns have little force here.  Ms. Bullock has demonstrated perfect compliance with her existing conditions, avoiding even the technical infractions common to strict pretrial supervision.  She will continue to be monitored by a GPS that tracks her every move, and she will have an obligation to check in daily with her supervisor.  She will still be subject to her existing geographic travel restrictions, and her delivery work will be within short distances on account of D.B.'s family business's local

---

[3] *See* Admin. Office of the U.S. Courts, *Overview of Probation and Supervised Release Conditions* at 72-73 (Nov. 2016), *available at* https://perma.cc/37QQ-849J (whereas "[h]ome incarceration requires 24-hours-a-day lock-down except for medical necessities and court appearances or other activities specifically approved by the court," "[h]ome detention" allows "pre-approved and scheduled absences for employment, education, religious activities…or other activities as approved by the [pretrial services] officer").

    customer base. Permission for non-stationary employment, in combination with the other conditions of her home detention, will still reasonably assure her appearance and the public safety.

    Ms. Bullock therefore respectfully requests that the Court make a modest dispensation from the typical, pre-COVID boundaries of home detention in order to allow her the most realistic chance at finding employment. Such modifications have previously been made where, as here, circumstances make it difficult for the defendant to find non-stationary work. *E.g.*, *United States v. Maria*, No. 19-MAG-10154, ECF 7 (S.D.N.Y. Nov. 26, 2019) (granting pre-COVID consent motion to allow home-detention defendant, a construction worker, to undertake non-stationary employment).

- Permit Ms. Bullock, as part of the terms of her home detention, to have a reasonable number of overnight visits at her mother's home in Manhattan, where two of her four children live and the site of her family's holiday gatherings, subject to pre-approval from and coordination with Pretrial Services.

## III. The Proposed Modifications are the Least Restrictive Conditions to Assure Appearance and Safety

Home detention, enforced by GPS monitoring and daily check-ins with Pretrial Services, remains a highly restrictive condition of pretrial release. Ms. Bullock seeks modest additional liberties that would allow her to live with greater dignity and security, find and maintain gainful employment, and better maintain her relationships with her young children and New York City-based family.

There is good reason for the Court to make such a modification. First and foremost, the Bail Reform Act requires an amendment of Ms. Bullock's conditions if the Court finds that any lesser restrictions could be imposed that would continue to reasonably assure Ms. Bullock's appearance and the community's safety. *See* 18 U.S.C. § 3142(c)(1)(B) (requiring "least restrictive" conditions); *id.* § 3142(c)(3) (permitting district judge to "at any time amend the [release] order to impose additional or different conditions of release").

Several additional considerations underscore the appropriateness of modification. *First*, the case schedule is materially different than it was when Ms. Bullock first petitioned for conditional release. At that time, the schedule called for pretrial motions two months later and a court conference the following week. Since then, the parties agreed to a significant extension in the schedule on account of the government's ongoing productions of discovery and counsel's need for adequate time to review the voluminous materials that continue to be produced. As a result, the initial conference was postponed by four and a half months to March 2021, and a trial date was set for a year after that in March 2022. Given the potential for Ms. Bullock's pretrial release and supervision to last for another sixteen months, a modification to home detention would sensibly relieve Ms. Bullock of unduly harsh restrictions while continuing to reasonably assure her appearance and community safety.

*Second*, the "weight of the evidence" factor is even less compelling now than when Ms. Bullock successfully rebutted the statutory presumption of detention in her initial bail application. (*See* ECF 214 at 6.) She is one of only three of fifteen defendants in this case not to be charged with a violent assault or a firearms offense, and she has indicated her strong desire to defend the charges if the government proceeds to trial. (*Id.*) In the several months since Ms. Bullock first petitioned for conditional release, counsel has made considerable progress reviewing the discovery produced to date. The "weight of the evidence" was never a compelling reason to detain Ms. Bullock, and the result of counsel's further review of the discovery further undermines the justifications for Ms. Bullock serving another sixteen months of pretrial home incarceration. While our review of the discovery is ongoing, we are not presently aware of any evidence that Ms. Bullock participated in gang-related activity, and specifically acts of violence and/or narcotics trafficking, in any manner warranting the imposition of the mandatory minimum sentences contemplated by the charges she shares with various differently situated co-defendants.

*Third*, modifying Ms. Bullock's conditional release to home detention would avoid unjust disparities with the release conditions of certain co-defendants in this case. Three of Ms. Bullock's co-defendants have conditions of home detention, not home incarceration – and two of those three co-defendants, unlike Ms. Bullock, are facing charges of either violent assault or a firearms offense with what the government has described as overwhelming evidence. *See* Bail Hr'g Tr., *United States v. Arguedas (Nieves)*, No. 20-CR-135 (JMF), ECF 106 at 7-8 (S.D.N.Y. Mar. 18, 2020) (Aaron, M.J.) (granting home detention in location the government alleged was an "apartment that's used by the gang for meetings, it's used by the gang to store drugs, and it's used by the gang to store firearms" to defendant who made "numerous controlled buys" and who "waived his *Miranda* rights and made significant statements to law enforcement about his involvement in this gang"); Bail Hr'g Tr., *United States v. Arguedas (Mickey)*, ECF 97 at 5-8 (S.D.N.Y. Mar. 18, 2020) (Aaron, M.J.), *aff'd*, ECF 91 (S.D.N.Y. Mar. 19, 2020) (McMahon, C.J.) (granting home detention to defendant with violent criminal history after government played video in which he allegedly personally committed a violent assault charged in this case); *see also United States v. Arguedas (Cordero)*, No. 20-CR-135 (JMF), ECF 162 (S.D.N.Y. Jul. 2, 2020) (Furman, J.) (granting consent motion to modify conditions of release to home detention to allow co-defendant to leave for work and other activities as approved by Pretrial Services).

*Finally*, modifying Ms. Bullock's release conditions to allow her to find employment and maintain closer family ties would better serve the social function of the criminal justice system. No legitimate public purpose is advanced by prohibiting Ms. Bullock, who is twenty-five years old and has a long life ahead of her however this case is ultimately resolved, from being a productive member of society and a present parent for her children while she is presumed innocent and preparing to defend against the offenses alleged in this case. And there is a clear public policy in favor of better integrating people involved with the criminal justice system into the orderly institutions of society, from the workplace to the family. (Indeed, this is one reason that a defendant's employment and family ties are relevant considerations for their suitability for pretrial release in the first place.) Ms. Bullock's initial bail application rebutted the presumption of detention associated with the government's charges, and made clear that she poses no risk of flight or danger that cannot be met with conditions of release. Allowing closely monitored

KAPLAN HECKER & FINK LLP

opportunities for gainful employment and meaningful family relationships will only further reduce the risks that the Bail Reform Act is intended to mitigate.

### Conclusion

Ms. Bullock has demonstrated an unfailing commitment to comply with any conditions this Court sees fit to impose on her pretrial release. But home incarceration is no longer the "least restrictive" means of reasonably assuring her appearance and public safety. Modification to home detention would allow Ms. Bullock to find employment and be a meaningful presence in her children's lives for the sixteen months between now and the current date of her trial. Ms. Bullock respectfully requests that the Court modify the conditions of her release from home incarceration to home detention with the terms proposed in this application.

Thank you for your consideration of this matter.

Respectfully submitted,

Jenna M. Dabbs
Justin Horton
Brandon C. Thompson
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
jdabbs@kaplanhecker.com
jhorton@kaplanhecker.com
bthompson@kaplanhecker.com

*Counsel for Denise Bullock*

cc: AUSAs Danielle Sassoon, Andrew Chan, and Brandon Harper,
SAUSA Jaclyn Wood (by ECF), Pretrial Services Officer Bernisa Mejia (by email)

Application GRANTED in part and DENIED in part. The application is granted except as to the request to permit non-stationary employment. The Government raises valid concerns about allowing the Defendant to work for a family business in a non-stationary capacity. And although stationary employment may be harder to come by than the non-stationary employment that appears to be available, the Court is not persuaded that Ms. Bullock has exhausted her efforts to find such work. Accordingly, that portion of the application is DENIED, albeit without prejudice to a renewed application in the event that Ms. Bullock is unable, with the assistance of counsel and Pretrial Services and despite her due diligence, to find stationary employment. The Clerk of Court is directed to terminate ECF No. 288. SO ORDERED.

November 18, 2020